# United States Court of Appeals
## For the First Circuit

No. 04-1986

MICHAEL J.M. WRIGHT,

Plaintiff, Appellant,

v.

R. R. DONNELLEY & SONS CO. GROUP BENEFITS PLAN, et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Torruella, Circuit Judge,

Stahl, Senior Circuit Judge,

and Oberdorfer,[*] Senior District Judge.

Stephen L. Raymond, for appellant.
John-Mark Turner, with Sheehan, Phinney, Bass + Green, P.A.,
on brief, for appellees.

March 25, 2005

---

[*]Of the District of the District of Columbia, sitting by
designation.

**OBERDORFER**, <u>Senior District Judge</u>. Plaintiff-appellant, Michael J. M. Wright, appeals the district court's entry of summary judgment in favor of defendants-appellees, R. R. Donnelley & Sons Co. Group Benefits Plan, and Hartford Life and Accident Insurance Company ("Hartford"). Wright alleged that Hartford's termination of his short-term disability benefits, and its failure to grant his long-term disability benefits, violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. For the reasons stated below, we affirm.

## I. BACKGROUND

### A. The Plan

In connection with his employment with financial services firm R. R. Donnelley & Sons Company ("Donnelley"), Wright was covered as a participant under Donnelley's Group Benefits Plan (the "Plan"). Benefits under the short term disability ("STD") portion of the Plan are administered by Hartford and funded by Donnelley through a trust. App. at A150. Benefits under the long term disability ("LTD") portion of the Plan are administered by Hartford and funded in full by an insurance policy issued by Hartford. <u>Id.</u> The Plan states that, "Hartford has sole authority to approve or reject claims according to the program rules, and follow through with the ERISA appeals process." <u>Id.</u> at A147. Benefits are not payable unless, among other requirements, an employee submits "proof of loss satisfactory to The Hartford." <u>Id.</u> at A170.

-2-

**B.    Wright's Application for STD Benefits**

On June 19, 2001, Wright took a medical leave from work, claiming he was suffering from headaches and irregular memory loss which prevented him from carrying out his job functions. See App. at A111-A113. Wright subsequently applied for STD benefits in accordance with the Plan's provisions. Id. at A207. Wright submitted Attending Physician Statements ("APS") from his primary care physician, Dr. Maurice B. Cohen, and his psychologist, Ron Michaud, Ph.D. See id. at A188-89; id. at A210-11. Both Drs. Michaud and Cohen reported that Wright's subjective symptoms were memory problems. See id. at A188-89; id. at A210-11. Dr. Cohen recommended that Wright be kept out of work pending the results of neuropsychological testing. Id. at A210-11. Dr. Michaud indicated that Wright's ability for sustained concentration "has severely impaired current job performance." Id. at A210-11. He declined to indicate any specific psychiatric impairments, stating that it was unclear if the "process is psychiatric or neurological." Id. Based on this information, Hartford granted Wright's STD benefits through July 29, 2001. Id. at A379. Pending results of the neuropsychological testing, Hartford extended Wright's STD benefits through August 20, 2001. Id. at A380.

In a status report to Hartford, on August 20, 2001, Dr. Cohen diagnosed Wright with memory loss and indicated the necessity of additional neurological testing. See id. at A198-99. Dr. Cohen

-3-

again recommended that Wright not return to work until an appropriate diagnosis was made. Id. By letter dated August 24, 2001, Hartford notified Wright that it was extending his STD benefits through September 23, 2001. Id. at A381. The letter further stated:

> If you remain disabled beyond September 23, 2001, your physician must submit supporting medical information to our office. This must include the specific results of your July 11 and August 28, 2001 tests. We will also require an evaluation by your primary care physician that addresses a specific diagnosis, restrictions and limitations that prevent you from returning to work, your treatment plan and any changes in your treatment, and a return to work plan.

Id.

On September 20, 2001, Dr. Cohen provided another update to Hartford, explaining that Wright had difficulty finding a neuropsychologist covered by his health insurance but finally was able to schedule an appointment with Dr. Ann Avery for October 2, 2001.[1] Id. at A248. Based on this information, Hartford extended STD benefits until October 14, 2001, to allow time for his physicians to review the results of Dr. Avery's testing. See id. at A196.

On October 15, 2001, after reviewing the results of Dr.

---

[1]Wright also submitted a letter to Hartford detailing his attempts to obtain formal testing and indicating that his health carrier refused to approve full neuropsychological testing, allowing Wright only an "initial set of tests." Id. at A208-09.

-4-

Avery's neuropsychological assessment of Wright, Dr. Cohen submitted a new APS to Hartford, which addressed for the first time the level of Wright's psychiatric impairments. See id. at A190-91. Dr. Cohen indicated an impairment of less severe than "[m]oderate impairment in occupational functioning" but more severe than "slight difficulty." Id. Dr. Cohen also telephoned Hartford and explained Dr. Avery's tests showed that Wright's "short term memory is good" but that Wright had "weakness recalling long term events and narriatives[sic]."[2] Id. at A193. Dr. Cohen further reported that an MRI was normal and there was no diagnosis for Wright yet. Id. at A193. Hartford extended Wright's STD benefits until October 28, 2001, pending the results of Wright's examination by a new psychiatrist, Dr. Clive D. Dalby.

On October 26, 2001, Dr. Dalby submitted an APS to Hartford diagnosing Wright with Amnestic Syndrome Not Otherwise Specified. Id. at A212-13. Dr. Dalby indicated that Wright suffered "severe short term memory loss & thought blocking," and described this as causing a "moderate impairment in occupational functioning," but did not specify such limitation. Id.

## C. Wright's Application for LTD Benefits

Wright applied for LTD benefits on November 13, 2001. Meanwhile, Hartford referred Wright's STD claim to one of its

---

[2]According to Dr. Avery's findings, Wright's memory was generally good, though he had a below average score on a single sub-test of delayed recall. Id. at A223.

Behavioral Health Case Managers for review. The Case Manager noted that "[t]he only thing we have with all of these tests that were reportedly done is [Wright's] self-reported memory loss . . . . There are not other impairment[sic] noted and the info doesn't indicate how severe or mild that memory loss is as substantiated by neuropsychological testing." Id. at A282-83.

Concluding that there was no sufficient medical evidence of the severity of Wright's reported symptoms or any occupational limitations, Hartford denied Wright's STD benefits effective October 28, 2001. See id. at A185-87. On the same day, Hartford denied Wright's LTD claim, because its conclusion that Wright was not prevented from performing his job meant that one prerequisite under the LTD portion of the Plan (disability throughout the 26-week elimination period) was not satisfied. See id. at A214-16. In its denial letters, Hartford specifically invited Wright to submit "test results and reports which document deficits in short term memory and how it affects your occupational functioning beyond October 28, 2001." See id. at A185-87; id. at A214-16.

**D. Wright's First Appeal**

On December 3, 2001, Wright appealed Hartford's initial denial. See id. at A384-89. Wright provided explanatory statements by himself and his wife as well as the Neuropsychological Assessment of Dr. Avery dated October 2, 2001 and a December 6, 2001 letter of Dr. Dalby, indicating Dr. Dalby's

conclusion that Wright was disabled from performing his occupation. See id.; id. at A222-24; id. at A220-21. Hartford considered this additional evidence, as well as a job description submitted by Wright's employer. See id. at A217-19. By letter dated March 12, 2002, Hartford reaffirmed its denial, claiming that the documents submitted did not provide any medical evidence regarding the severity of any cognitive deficits suffered by Wright and, thus, did not establish any specific occupational limitations. Id. at A218. Hartford found the "results of the neuropsychological testing is[sic] consistent with an ability to perform the essential duties of [Wright's] occupation." Id.

**E.   Wright's Second Appeal**

Wright filed a second appeal on June 3, 2002, in which he submitted an APS from a new neurologist, Dr. Bryan Lieberman. See id. at A285-326. Dr. Lieberman diagnosed Wright with sleep apnea and memory disorder. See id. at A355-56. In describing Wright's cognitive deficit, Dr. Lieberman termed it a "neurologic cognitive disorder" including impaired memory, attention, and executive function, as well as daytime somnolence, and fatigue. Id. Dr. Lieberman concluded that the "above deficit disables [Wright] for his job--working as a software engineer." Id.

Hartford referred Wright's entire file to two Independent Medical Examiners at the University Disability Consortium for review--Dr. Alvin McElveen, Neurologist, and  Milton Jay, Ed.D,

Neuropsychologist. Upon review of Wright's case file, Dr. McElveen concluded that sleep apnea had been documented; thus the medical evidence "support[ed] cognitive impairment as a result of the physical conditions present on 10/28/2001." Dr. McElveen referred to Dr. Jay's report for an assessment of the effect of any impairments on Wright's cognitive functioning. Id. at A351. Dr. Jay concluded that, although sleep apnea had been confirmed by a polysomnogram ordered by Dr. Lieberman, the medical evidence did not confirm that the apnea was causing even "mild difficulties in cognition secondary to interrupted sleep and subsequent fatigue." Id. at A338.

Based on the opinions of Drs. Jay and McElveen, the additional medical records from Drs. Cohen and Lieberman, the information submitted by Wright in his appeal, and all the other information already in the claim file, Hartford reiterated its denial on October 2, 2002. Hartford reasoned that even assuming minor cognitive difficulties existed, none were severe enough to prevent Wright from performing the essential functions of his occupation. See id. at A352-54.

## F.  District Court

Wright filed suit in the United States District Court for the District of New Hampshire on June 10, 2003. Wright claimed that Hartford acted under an inherent conflict of interest because it both administered and funded the LTD benefits. Wright also

alleged that Hartford acted under an actual conflict of interest, evidenced by its bad faith in handling Wright's claims for STD and LTD benefits. Hartford's conflict of interest, according to Wright, required a less deferential review of Hartford's denial of Wright's benefits. Furthermore, even under deferential arbitrary and capricious review, according to Wright, Hartford's denials of STD and LTD benefits were not based upon substantial evidence, reasonably sufficient to support Hartford's decisions.

Defendants filed a Motion for Summary Judgment on February 4, 2004, and Wright filed a cross Motion for Summary Judgment on March 8, 2004. After extensive oral argument, the district court granted Defendants' Motion for Summary Judgment and denied Wright's Motion for Summary Judgment on June 17, 2004. The district court considered but rejected Wright's claim that Hartford acted out of an improper financial motivation. The court similarly rejected Wright's other arguments for heightened scrutiny of Hartford's decisions. Applying the arbitrary and capricious standard of review, the district court found that, despite some contradictory evidence, substantial evidence existed to support Hartford's decision that any cognitive deficits were minor and not disabling. The court entered a Final Judgment on June 18, 2004. Wright filed a timely Notice of Appeal on July 14, 2004.

## II. DISCUSSION

### A.   Standard of Review

The Court reviews a district court's grant of summary judgment *de novo*.  See Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9, 15 (1st Cir. 2003).  The district court generally reviews an ERISA plan administrator's benefits determinations *de novo*. Allen v. Adage, Inc., 967 F.2d 695, 697-98 (1st Cir. 1992).  If, however, by its terms, the ERISA plan grants the plan administrator discretionary authority in the determination of eligibility for benefits, the administrator's decision must be upheld unless it is "arbitrary, capricious, or an abuse of discretion."[3]  Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998).

The operative inquiry under arbitrary, capricious or abuse of discretion review is "whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits."  Twomey v. Delta Airlines Pension Plan, 328 F.3d 27, 31 (1st Cir. 2003) (citing Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002)).  A decision to deny benefits to a  beneficiary will be upheld if the

---

[3]For purposes of reviewing benefit determinations by an ERISA plan administrator, the arbitrary and capricious standard is functionally equivalent to the abuse of discretion standard.  See Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 320 F.3d 415, 419 (1st Cir. 2000).  We refer to the relevant standard as "abuse of discretion review."

administrator's decision "[was] reasoned and supported by substantial evidence." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004); see also Boardman, 337 F.3d at 15 (holding that a district court can "overturn [an administrator's] termination decision only if 'the insurer's eligibility determination was unreasonable in light of the information available to it'")(internal citation omitted). Evidence is substantial when it is "reasonably sufficient to support a conclusion." Id. Evidence contrary to an administrator's decision does not make the decision unreasonable, provided substantial evidence supports the decision. See Gannon, 360 F.3d at 213; see also Doyle, 144 F.3d at 184 ("Sufficiency, of course, does not disappear merely by reason of contradictory evidence.").

In applying the arbitrary and capricious standard, however, the existence of a conflict of interest on the part of the administrator is a factor which must be considered. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In this Circuit, if a court concludes there is an improper motivation amounting to a conflict of interest, the court "may cede a diminished degree of deference--or no deference at all--to the administrator's determinations." Leahy, 315 F.3d at 16. However, "[a] chimerical, imagined, or conjectural conflict will not strip the fiduciary's

determination of the deference that otherwise would be due."[4]  <u>Id.</u>
If no conflict of interest is apparent, a court must proceed to
ensure that the decision was not objectively unreasonable in light
of the available evidence, recognizing that the existence of a
potential conflict of interest will affect the court's
determination of what was reasonable conduct by the insurer under
the circumstances.  <u>Pari-Fasano</u>, 230 F.3d at 419.

Here, there is no dispute that the Plan confers
discretion on the Plan Administrator.  <u>See</u> App. at A147.  The
parties disagree, however, as to whether Hartford labored under a
conflict of interest.  Thus, before addressing the substantive
merits of the district court's decision, it is necessary to
determine whether there was a conflict of interest, such that the
district court should have considered this as a factor in its
arbitrary and capricious review.

**B.  Conflict of Interest**

Wright argues that Hartford labored under a conflict of
interest, as evidenced by (1) its dual status as payor of benefits
and administrator with respect to the LTD benefits and (2) other
factors that Wright claims evidence an "improper motivation."

Upon a *de novo* review of the evidence, we conclude that
the district court properly rejected Wright's claims that Hartford

---

[4]The burden is on the claimant, here Wright, to demonstrate a
conflict of interest.  <u>Pari-Fasano</u>, 230 F.3d at 418.

-12-

acted under a conflict of interest.

## 1. Conflict Based on Status

Turning first to Wright's structural conflict of interest claim, the district court concluded that, although Hartford clearly had a financial incentive to maximize profits with respect to the LTD Plan, which it fully insured, the potential that it would deny claims based on self-interest was not alone sufficient to alter the standard of review. See App. at A89. Under the law of this Circuit, "[t]he fact that [] the plan administrator[] will have to pay [the plaintiff's] claim[] out of its own assets does not change [the arbitrary and capricious] standard of review." Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 125-26 (1st Cir. 2004) (noting that simply because a plan administrator has to pay a claim does not deprive the administrator of discretion when the terms of the plan grant discretion); see also Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999); Doyle, 144 F.3d at 184.

In Pari-Fasano, the Court acknowledged that an insurer "does have a conflict of sorts when a finding of eligibility means that the insurer will have to pay benefits out of its own pocket," but determined that the market presents competing incentives that substantially minimize the apparent conflict of interest. 230 F.3d at 418. In Doyle, the Court identified the competing incentives, explaining that employers have benefit plans to please employees and, consequently, will not want to keep an overly tight-fisted

-13-

insurer.  144 F.3d at 184.  Thus, according to the Court, an insurer could "hardly sell policies if it is too severe in administering them."  Doe, 167 F.3d at 57.

Wright acknowledges this precedent but argues that the rationale relied upon in these decisions overstates the ability of market forces to minimize the apparent conflict.  The district court similarly was troubled by what it deemed the "false premise" that an ERISA plan administrator that also has a financial stake in the benefit decisions can act as a disinterested trustee.  Bound by well-established precedent, however, the court properly declined to apply a less deferential standard due to the alleged structural conflict.[5]

---

[5]We also are bound by decisions of prior panels of this Circuit, absent an opinion by the Supreme Court, an *en banc* opinion of the Circuit or statutory overruling.  See Iguarta-De La Rosa v. United States, 386 F.3d 313, 313 (1st Cir. 2004).  We are nevertheless mindful that other circuits have rejected the market forces rationale and specifically recognized a conflict of interest when the insurer of an ERISA plan also serves as plan administrator, although there is no consistent approach in accordingly adjusting the standard of review.  See, e.g., Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997 (10th Cir. 2004) (holding that plan administrators acting under an inherent conflict of interest have the burden of showing that their decision to deny disability benefits is supported by substantial evidence); Davolt v. Executive Comm. of O'Reilly Auto., 206 F.3d 806, 809 (8th Cir. 2000) (noting that *de novo* review may apply where "relationship places the ERISA benefits plan administrator in a perpetual conflict of interest"); Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323 (9th Cir. 1995) (presuming conflict and shifting burden of proof to insurer); Brown v. Blue Cross & Blue Shield of Ala., Inc., 898 F.2d 1556, 1566-67 (11th Cir. 1990) (same); Pinto v. Reliance Standard Life Ins. Co, 214 F.3d 377, 393 (3rd Cir. 2000) (adopting sliding scale approach); Doe v. Group Hospitalization & Med. Serv., 3 F.3d 80, 87 (4th Cir. 1993) (same); Wildbur v. ARCO Chem. Co.,

### 2. Conflict Based on Improper Motivation

Having rejected Wright's structural conflict of interest argument, the district court turned to an examination of Wright's claims that Hartford was improperly motivated, see Doyle, 144 F.3d at 184, finding each unpersuasive. On appeal, Wright claims that the district court erred in failing to find a conflict of interest on the part of Hartford based on: (1) the timing of the benefit denial, coming immediately before Hartford would be financially exposed under the LTD plan; (2) the fact that the medical evidence supporting Wright's claim was never reviewed by a physician prior to Hartford's denial of the STD and LTD claims on November 29, 2001; (3) the fact that the same examiner made both the STD and LTD benefit determinations; (4) the fact that Hartford did not have a copy of Wright's job description prior to its denial of STD and LTD benefits on November 29, 2001; and (5) Hartford's refusal to fulfill Wright's requests for certain documentary evidence concerning his claim.

### a. Timing of Denial of STD and LTD Benefits

Wright claims that the timing of the rejection of both his STD and LTD benefits—-as the LTD benefit date was approaching—-demonstrated an actual conflict of interest. According to Wright, Hartford granted STD benefits to Wright when it did not have a

_____

974 F.2d 631, 638-42 (5th Cir. 1992) (same); Van Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1052-53 (7th Cir. 1987) (same).

financial stake in the payment of benefits and then denied benefits to Wright as the time approached when Hartford would be financially liable. After a thorough review of the evidence, however, the district court found that it was apparent that the decision to terminate benefits was based on the evolving state of plaintiff's medical record. This conclusion was amply supported by the evidence.

Hartford granted Wright's STD benefits beginning on June 27, 2001. See App. at A379. Hartford extended the STD benefits until August 20, 2001, after being informed by Plaintiff's primary care physician, Dr. Cohen, that Wright had undergone or would be undergoing neuropsychological testing shortly. See id. at A189; id. at A201; id. at A380. During the summer and fall of 2001, no test results were provided to Hartford. Hartford, nevertheless, extended STD benefits to September 23, then to October 14, and finally to October 28, 2001, based on Dr. Cohen's statements that Wright should not return to work until the results of neuropsychological testing were known. See id. at A189; id. at A197; id. at A248. During that time, Hartford consistently informed Wright that it was awaiting the results of neuropsychological testing that would document the severity of his self-reported memory loss. See id. at A192-A200. Following Dr. Avery's Neuropsychological Assessment on October 2, 2001, Dr. Cohen submitted an APS, indicating a level of impairment below that of

"[l]imited in performing some occupational duties." Id. at A191. Dr. Cohen additionally reported to Hartford that the tests showed that "short term memory is good" but that Wright had some "weakness recalling long term events and narriatives[sic]." See id. at A193. Dr. Cohen indicated that Wright's MRI was normal. See id. Dr. Dalby submitted an APS shortly thereafter, stating that Wright suffered "severe short term memory loss." This finding directly contradicted the neuropsychological test results, as reported by Dr. Cohen. See id. at A213.

Wright, thus, did not present a consistent diagnosis or opinion on functional limitation. Hartford's decision to deny further benefits was reasonably based on evidence indicating that Wright did not suffer the limitations in performing his essential job functions that would qualify him for the disability benefits. The timing of the denial of benefits did not evidence an improper motivation on the part of Hartford, amounting to a conflict of interest.

### b. Denial of Benefits Initially Made Without Review by Physician

Wright argues that Hartford did not have a physician review his medical record before denying his STD and LTD claims on November 29, 2001, evidencing that the decisions were based on an actual conflict of interest. The district court properly rejected this argument.

As Appellees indicate, courts have not required that an

-17-

ERISA claimant's medical records always be independently verified by medical doctors as a prerequisite to a benefit determination. See generally Brigham v. Sun Life, 317 F.3d 72, 85 (1st Cir. 2003) (concluding administrator not required to conduct independent medical evaluation when treating physician's reports supported finding of no disability).

Here, it is clear that the plan administrator reviewed the documentation submitted by Wright's primary care physician, Dr. Cohen, who opined in his APS that Wright's symptoms were not so severe as to prevent him from performing occupational functions. See App. at A245. Hartford was not acting in bad faith, or under an improper motivation, in relying on Dr. Cohen's conclusions to deny benefits to Wright without an independent medical evaluation.

### c. Use of Same Examiner for STD and LTD Benefit Determinations

Wright argues that the same claims examiner denied both the STD and LTD claims, thus indicating that there was no "independence between Hartford's STD and LTD departments." Appellant's Br. at 28. The district court correctly determined that the fact that the same examiner made both LTD and STD benefits determinations did not demonstrate a conflict of interest.

There are no statutory or regulatory provisions under ERISA requiring independence, and Wright cites to no authority indicating that such an overlap makes benefits decisions suspect. Furthermore, it is clear that the claims administrator reviewed the

medical evidence submitted by Wright and based the benefits determination largely on the conclusions of Wright's own physician, Dr. Cohen.  See App. at A245.

### d.  Hartford Did Not have a Copy of Wright's Job Description Before Denying Benefits

Wright claims that Hartford's failure to obtain a copy of his job description before denying benefits on November 29, 2001 evidences Hartford's bad faith.  The district court properly rejected this argument.

It was Wright's burden to provide evidence that he was unable to perform the duties of his occupation.  See Boardman, 337 F.3d at 16.  An integral part of that evidence would be a statement of what his job required.  Wright never submitted such a statement. Instead, Hartford actively sought out and obtained a copy of Wright's job description during the review process.[6]  See App. at A102-103.

### e.  Hartford's Refusal to Fulfill Wright's Requests for Certain Documentary Evidence

Wright claims that Hartford declined to provide him with a transcript of a telephone conversation between them, and with a

---

[6]Wright also contends that Hartford's criticism of Dr. Dalby's conclusion that Wright was disabled from performing his job because Dr. Dalby was not aware of Wright's job description evidenced Hartford's improper motivation.  Although Dr. Dalby indicated to Hartford that he was aware that Wright's job required giving presentations, see App. at A273, the district court properly found no indication of bad faith in Hartford's concern about Dr. Dalby's lack of information about the specific requirements of the occupation for which Wright claimed disability.

copy of the Summary Detail Report--which contained summaries of Hartford's communications with Wright, his doctors, and among examiners--despite his written requests. Hartford responds that it did provide one requested telephone transcript and that a second one was requested for an occasion when, in fact, only a recorded message had been left on Wright's voicemail. As for the Summary Detail Report, Hartford indicates that the substance thereof was either already known to Wright, or was communicated to him in letters, telephone conversations and copies of his claim file from Hartford.

It appears that Hartford did provide adequate documentary evidence to Wright, and we decline to interpret the omission of the Summary Detail Report as an indication of bad faith.

Wright, thus, failed to establish any improper motivations on the part of Hartford, amounting to a conflict of interest. Accordingly, the district court properly reviewed the substantive merits of Wright's claims under an arbitrary and capricious standard.

## C. Review of Denial of Wright's STD and LTD Claims

Wright argues that even under the deferential arbitrary and capricious standard Hartford's denial of Wright's STD and LTD benefits was not supported by substantial evidence. Specifically, Wright claims that Dr. Lieberman's diagnosis of sleep apnea, along with his opinion that Wright was totally disabled, "cannot

-20-

reasonably be diminished by any other evidence in Mr. Wright's file." Appellant's Br. at 32.

The district court found that there was not substantial disagreement that Wright suffered from sleep apnea or that Wright's memory was generally average or above, except for some limited areas--causing some impairment to his cognitive capacities. See App. at A93. The district court noted, however, that based on the entire medical record there was disagreement among all the physicians (including Wright's treating physicians and Hartford's independent medical examiners) as to the extent of the impairment and the impact on Wright's ability to perform his essential job functions. Id.; see Matias-Correa v. Pfizer, Inc., 345 F.3d 7, 12 (1st Cir. 2003) (noting that it is not the court's role to evaluate how much weight an insurer should have accorded the opinion of an independent medical consultant relative to the opinions of a claimant's own physicians). The district court reasoned that although there was conflicting medical evidence, there was sufficient evidence that Wright's impairments were minor and not disabling according to the STD and LTD Plan provisions. Id.; see also Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001) ("[T]he existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary.").

Mindful of the deferential nature of arbitrary and capricious or abuse of discretion review, we conclude that the

district court properly granted summary judgment in favor of the defendants.

### III.   CONCLUSION

For the reasons set forth above, we agree with the lower court's conclusion that the termination of Wright's STD benefits and denial of Wright's LTD benefits, as a matter of law, did not violate ERISA.  We therefore affirm the summary judgment dismissing Wright's action.

AFFIRMED.