# United States Court of Appeals
## For the First Circuit

No. 15-2387

GEORGE J. VENDURA, JR.,

Plaintiff, Appellant,

v.

JONATHAN BOXER; NORTHROP GRUMMAN CORPORATION; NORTHROP GRUMMAN
SPACE & MISSION SYSTEMS CORP. SALARIED PENSION PLAN; KEN
BEDINGFIELD; MICHAEL HARDESTY; NORTHROP GRUMMAN SPACE & MISSION
SYSTEMS CORP. SALARIED PENSION PLAN ADMINISTRATIVE COMMITTEE;
NORTHROP GRUMMAN AEROSPACE SECTOR; TIFFANY MCCONNELL; NORTHROP
GRUMMAN SPACE & MISSION SYSTEMS CORP.; DENISE PEPPARD,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Stephen D. Rosenberg, with whom Caroline Fiore and The
Wagner Law Group were on brief, for appellant.
Brian D. Netter, with whom Nancy G. Ross and Mayer Brown
LLP were on brief, for appellees.

January 11, 2017

**BARRON, <u>Circuit Judge</u>.** This appeal involves a suit for pension benefits that George Vendura brings against Northrop Grumman Corp. ("Northrop") and a number of related entities and individuals.[1] The key point of contention concerns the number of "years of benefit service" that should be credited to Vendura in calculating his pension benefits under his pension plan. We affirm the judgment below, which grants summary judgment to defendants.

## I.

Vendura was hired by TRW Inc. ("TRW") in 1993 and became a participant in the TRW Salaried Pension Plan ("TRW Plan"). After Vendura worked for TRW for seven years, he went on medical leave in June of 2000, in consequence of work-related injuries that he had suffered much earlier. During this leave, Vendura received Social Security and long-term disability benefits. Vendura also applied for and, he contends, received workers' compensation benefits during this time.

In 2002, Northrop acquired TRW and renamed the company Northrup Grumman Space and Mission Systems Corp. ("NGSMSC").

---

[1] In particular, Vendura brought suit against ten corporate and individual defendants: Northrop Grumman Corp., Northrop Grumman Aerospace Sector, Northrop Grumman Space & Mission Systems Corp., Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan, Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan Administrative Committee, Jonathan Boxer, Ken Bedingfield, Michael Hardesty, Tiffany Mcconnell, and Denise Peppard.

Soon thereafter, NGSMSC attempted to terminate Vendura's employment. Vendura, however, challenged the attempt to lay him off, and, in 2003, Vendura and NGSMSC signed a settlement agreement that kept Vendura on board at NGSMSC.

The settlement agreement provided that Vendura would remain an "employee" of NGSMSC and "receive all benefits and rights to which he is entitled pursuant to all benefit plans for which he is eligible." The settlement agreement further provided that Vendura would cease to be a NGSMSC employee only when one of several specific conditions came to pass. One of those conditions was that "Vendura's LTD [long-term disability] status ends."

Because this case concerns a dispute over pension benefits rather than employment, however, the settlement agreement matters only insofar as it relates to Vendura's pension plan. And, the relevant pension plan is the NGSMSC Salaried Pension Plan ("NGSMSC Plan"), which, for former TRW employees like Vendura, incorporated the eligibility criteria set forth in the TRW Plan.

The TRW Plan provides that pension benefits for participants, like Vendura, are to be calculated on the basis of the participant's "Years of Benefit Service." Section 2.2 of the TRW Plan, in subsection (a), makes clear that such years include ones in which a participant receives compensation "for

the performance of services." But, in the subsequent subsections of Section 2.2, the TRW Plan allows participants to accrue years of benefit service even for periods of time in which the participant is absent from work, so long as that absence is for a reason that is specified in one of those follow-on subsections in Section 2.2.

Only two of the follow-on subsections are relevant here: subsections (b) and (c). Until 1999, these two subsections read as follows:

> (b) absence without pay from work because of injury or occupational disease received in the course of his employment with the Controlled Group and for which he receives Workers' Compensation disability benefits; provided, however, that service credit shall be limited to a maximum of twelve months unless the Participant has met the eligibility requirements for receiving long term disability benefits (whether or not he actually receives such benefits);

> (c) absence without pay from work due to a disability and for which he is entitled to receive long-term disability benefits under any plan maintained by a member of the Controlled Group[.]

Effective January 1, 1999, however, the TRW Plan was amended by, among other things, changing subsection (c). Post-amendment, subsection (c) reads as follows:

> (c) absence without pay from work due to a disability and for which he is entitled to receive long-term disability benefits under any plan maintained by a member of the Controlled Group, provided, however, with

- 4 -

> respect to an absence from work beginning on or after January 1, 2000 as a result of disability, (i) no more than sixty months of Benefit Service will be credited under this Section 2.2(c) for a Participant with five or more years of Vesting Service and (ii) no more than twelve months of Benefit Service will be credited under this Section 2.2(c) for a Participant with less than five years of Vesting Service at the time such absence from work commences.

(emphasis added to highlight the newly added language).

The proper interpretation of these subsections became a subject of controversy after Vendura's long-term disability insurer informed Vendura -- in October of 2012 -- that his eligibility for long-term disability benefits would expire in February of 2013. Vendura did not dispute that his long-term disability benefits would expire at that time, or that, per the settlement agreement, his employment with NGSMSC would thus come to an end. For that reason, Vendura inquired about his pension benefits and received a "retirement kit" from the Northrop Grumman Benefits Center.[2]

In April of 2013, Vendura filed a claim for pension benefits with the "Administrative Committee" for the NGSMSC Plan. Under the documents comprising the NGSMSC Plan, the Administrative Committee "is the 'plan administrator' under" the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

---

[2] More precisely, Vendura received two retirement kits: one that would have allowed him to elect a lump-sum distribution of his pension, and a second that did not grant him that option.

- 5 -

U.S.C. § 1001 et seq., and possesses the "full and sole discretionary authority to interpret all plan documents and to make all interpretive and factual determinations as to whether any individual is entitled to receive any benefit and the amount of such benefit under the terms of the Plan."

In making his pension benefits claim to the Administrative Committee, Vendura argued that he is entitled to twenty years of benefit service under the settlement agreement. Vendura also argued that, even independent of the settlement agreement, he is entitled to that same number of years of benefit service under the plain terms of subsection (b) of Section 2.2. Finally, Vendura argued that he is entitled to elect a lump-sum distribution of his pension.

The Administrative Committee rejected Vendura's arguments in letters sent to him in May and June of 2013. The letters informed Vendura that he was eligible for a pension reflecting only twelve years of benefit service and not the twenty years of benefit service that Vendura contended that he had accrued. The letters also rejected Vendura's contention that Vendura was entitled to elect a lump-sum distribution of his pension.

The Administrative Committee's calculation of Vendura's years of benefit service reflected the following determinations. The Administrative Committee concluded that the

settlement agreement does not provide for accrual of benefit service beyond the right of accrual under the NGSMSC Plan itself. The Administrative Committee further found that, under the NGSMSC Plan, by virtue of Section 2.2 of the TRW Plan that it incorporates, Vendura was entitled only to five years of benefit service for the thirteen years in which he was both absent from work due to his disability and for which he was eligible for long-term disability benefits. The Administrative Committee based that determination on the amended version of subsection (c) of Section 2.2, which the Administrative Committee concluded barred a participant from accruing more than sixty months of benefit service based on the participant's eligibility for long-term disability benefits. The Administrative Committee therefore credited Vendura with only twelve years of benefit service, based on the five years of benefit service that he accrued during his absence from work and the seven years of benefit service that he accrued under subsection (a) of Section 2.2 during his employment with TRW and before his disability-based absence began.

Vendura appealed the decision to the Administrative Committee, which issued its final decision denying Vendura's appeal with respect to each of these issues on December 19, 2013. So, in 2014, Vendura filed an eight-count complaint in

the United States District Court for the District of Massachusetts against the defendants.

The main issue on appeal arises under ERISA, which permits a pension plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Vendura invokes this provision of ERISA in his complaint in requesting that the District Court compel defendants to fulfill their obligations under the NGSMSC Plan. Vendura also brings a separate state law claim, in which he argues that defendants are in breach of their obligations under the settlement agreement, given what he contends is the agreement's relationship to his rights under his pension plan.

After the defendants moved for summary judgment, the District Court granted the motion. The District Court ruled that the settlement agreement alone did not provide Vendura any right to accrue years of benefit service beyond those to which he would otherwise have been entitled. The District Court also ruled that the Administrative Committee's interpretation of the NGSMSC Plan, under which the sixty-month cap on the accrual of years of benefit service that subsection (c) sets forth applies to Vendura, was not arbitrary and capricious. And, on that basis, the District Court ruled that Vendura was not entitled to

pension benefits calculated based on his having accrued twenty years of benefit service. Finally, the District Court ruled that, in light of its finding with respect to the number of years of benefit service to which Vendura was entitled, Vendura also was not entitled to elect a lump-sum distribution of his pension.

This timely appeal of the summary judgment order followed.

## II.

We start with Vendura's claim based on the settlement agreement. He argues that because the settlement agreement makes clear that Vendura remained an employee of NGSMSC until his eligibility for long-term disability benefits expired, it necessarily also entitled him to continue to accrue years of benefit service for pension purposes up until that point in time. And, for that reason, Vendura contends he is entitled to the full twenty years of benefit service under the settlement agreement.

The District Court, like the Administrative Committee, rejected this argument. We review the District Court's interpretation of the settlement agreement de novo. See OfficeMax, Inc. v. Levesque, 658 F.3d 94, 97 (1st Cir. 2011) ("Contract interpretation . . . is a 'question of law' that is reviewed de novo."); see also Hannington v. Sun Life and Health

Ins. Co., 711 F.3d 226, 230 (1st Cir. 2013) ("extra-plan material" is reviewed de novo). And, on de novo review, we conclude that Vendura's interpretation of the settlement agreement is without merit.

Vendura is right that, under the settlement agreement, he remained an employee of NGSMSC until his eligibility for long-term disability benefits expired. And he is right that his eligibility for those benefits did not expire until February of 2013. But the settlement agreement merely provides that Vendura is entitled to "all benefits and rights to which he is entitled pursuant to all benefit plans for which he is eligible." Thus, by its terms, the settlement agreement just provides that Vendura retains the status of an employee and is entitled to receive whatever pension benefits under the NGSMSC Plan that he would otherwise be entitled to by virtue of being an employee. For this reason, the settlement agreement does not help Vendura. It merely directs us to examine those provisions of the NGSMSC Plan, including those provisions of the TRW Plan that the NGSMSC Plan incorporates, which bear on Vendura's right to accrue years of benefit service. And so we now turn to those provisions.

## III.

As we have noted, the NGSMSC Plan vests the Administrative Committee with the authority to interpret and apply the relevant provisions. As a result, and in accord with

the requirements of ERISA, we review the Administrative Committee's interpretations under the deferential arbitrary and capricious standard, which is "functionally equivalent to the abuse of discretion standard." Wright v. R.R. Donnelley & Sons Co. Grp. Benefits Plan, 402 F.3d 67, 74 n.3 (1st Cir. 2005). And, under that standard, we must defer to plan administrators when they "reasonably" construe ambiguous plan terms. See, e.g., Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 14 (1st Cir. 2003).

**A.**

In assessing the Administrative Committee's interpretation, it helps first to understand Vendura's proposed interpretation. Under subsection (a) of Section 2.2 of the TRW Plan, Vendura unquestionably accrued seven years of benefit service because he was compensated for his performance of services to TRW for seven years. But, he readily concedes, due to the disability that he suffered from on-the-job injuries and the extended absence from work that resulted, he was not in compliance with that condition thereafter.

Vendura contends, however, that he was in compliance with the condition for accruing years of benefit service set forth in the very next subsection of Section 2.2 -- subsection (b) -- because he contends that he received workers' compensation benefits due to his disability after he was no

- 11 -

longer able to work.[3] He thus argues that he falls within the first half of subsection (b), which provides for the accrual of benefit service for those participants who are "absen[t] without pay from work because of injury or occupational disease received in the course of [the participant's] employment with the Controlled Group and for which [the participant] receives Workers' Compensation disability benefits."

But participants who meet the condition specified in the first half of subsection (b) are, the rest of subsection (b) makes clear, entitled to accrue only one year of benefit service on that basis. And, if that one year is added to the seven years for which Vendura provided active service to TRW and was compensated, for which subsection (a) entitled him to accrue seven years of benefit service, he would be entitled to only a total of eight years of benefit service.

Vendura nevertheless continues undeterred. He explains that the second half of subsection (b) shows that he is in fact entitled to the extra twelve years of benefit service that he also contends that he accrued. Vendura points out that the second half of subsection (b) provides that "service credit shall be limited to a maximum of twelve months unless the Participant has met the eligibility requirements for receiving

---

[3] As defendants point out, the District Court made no finding on whether Vendura in fact received workers' compensation benefits.

- 12 -

long term disability benefits (whether or not he actually receives such benefits)" (emphasis added).  He also points out that this highlighted language places no temporal limit on a participant's right to accrue years of benefit service beyond the temporal limit on the participant's eligibility for the long-term disability benefits themselves.  Vendura therefore argues that the trailing language in the second half of subsection (b) sets forth a separate entitlement to accrue years of benefit service based on eligibility for long-term disability that is distinct from the entitlement to years of benefit service based on receipt of workers' compensation that is set forth in the first half of subsection (b).  And because his eligibility for long-term disability benefits did not expire until February of 2013, Vendura contends that subsection (b) entitles him to accrue years of benefit service for the whole of that time.

**B.**

The Administrative Committee counters Vendura by pointing out that subsection (b) is not the only subsection that addresses a participant's right to accrue years of benefit service on the basis of eligibility for long-term disability benefits.  In fact, the very next provision in Section 2.2 -- subsection (c) -- does so as well.  And the Administrative Committee points to that provision -- and the sixty-month cap on

the accrual of years of benefit service that it contains -- in offering its competing interpretation of the trailing language in the second half of subsection (b) and how that language relates to subsection (c).

Specifically, in its June 2013 letter to Vendura, the Administrative Committee described its view of the relationship between subsections (b) and (c), and how they apply to a participant like Vendura, as follows:

> [I]f a participant receives workers' compensation and long-term disability benefits concurrently, his benefit service is based on the period during which he received long-term disability benefits (subject to the 60-month limit [in subsection (c)] described above). In your case, you received long-term disability benefits once your leave of absence began in 2000. As a result, any workers' compensation benefits that you received during the same period are disregarded under the Plan.

Accordingly, that letter explained, Vendura was subject to the sixty-month cap on the accrual of years of benefit service in the amended subsection (c). And, in a later letter, the Administrative Committee elaborated further and noted that, historically, "[w]hen a participant received workers' compensation and long-term disability benefits concurrently his benefit service was always based on the period during which he received long-term disability benefits." In that letter, the Administrative Committee rejected Vendura's contrary contention

- 14 -

on the ground that subsection (b) did not create a "loophole" that would override the sixty-month cap imposed by subsection (c).

Thus, the Administrative Committee rejects Vendura's view that the second half of subsection (b) confers a stand-alone right to accrue years of benefit service for as long as a participant is eligible for long-term disability benefits to a participant who satisfies the condition set forth in the first half of subsection (b).  The Administrative Committee instead reads the second half of subsection (b) merely to set forth a proviso that preserves the right of a participant like Vendura -- notwithstanding that he may satisfy the condition in the first half of subsection (b) -- to accrue years of benefit service in accord with subsection (c).  The Administrative Committee therefore concluded that the sixty-month cap applies to Vendura, and that he is entitled to five years of benefit service beyond the seven years that he accrued under subsection (a), with the result that he accrued a total of only 12 years of benefit service.

### c.

The upshot of these dueling readings is that the parties agree that subsection (b)'s twelve-month cap does not apply to Vendura, but disagree as to whether subsection (c)'s sixty-month cap does.  And so the decisive question on appeal:

is the Administrative Committee's competing interpretation of subsections (b) and (c), under which the sixty-month cap does apply to Vendura, a reasonable one?

"When interpreting the provisions of an ERISA benefit plan, we use federal substantive law including the 'common-sense canons of contract interpretation.'" Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 585 (1st Cir. 1993) (quoting Bellino v. Schlumberger Techs., Inc., 944 F.2d 26, 29 (1st Cir. 1991)). Here, because the NGSMSC Plan documents provide that its provisions are to be construed in accordance with California law, we also look to California's principles of contract interpretation to guide our analysis. See Tetreault v. Reliance Standard Life Ins. Co., 769 F.3d 49, 54 (1st Cir. 2014).

Applying this interpretive approach, we must not view in isolation the trailing words in subsection (b) on which Vendura's argument hinges. And when we consider the text and structure of Section 2.2 as a whole, we find strong signals that favor the Administrative Committee's reading. See Bowers Hydraulic Dredging Co. v. United States, 211 U.S. 176, 188 (1908) ("To separate the words [of a phrase] from all the other provisions of the contract, in order to give them . . . meaning, repugnant to their significance in the contract, would be to destroy, and not to sustain and enforce, the contract requirements."); see also Hunt v. United Bank & Trust Co., 291

- 16 -

P. 184, 187 (Cal. 1930) ("[C]ontracts must be construed as a whole . . . and the intention of the parties is to be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole.").

First, subsection (b) addresses the accrual of years of benefit service based on eligibility for long-term disability benefits only in the course of setting forth an exception to a limitation on the wholly distinct entitlement that the subsection confers -- namely, the right of a participant to accrue twelve months of benefit service based on the participant's absence from work due to a job-related disability for which that participant received workers' compensation benefits. But an exception to a limitation on that entitlement is hardly an obvious place to locate the wholly distinct entitlement to accrue years of benefit service based on eligibility for long-term disability benefits. Subsection (c), by contrast, is quite direct in providing the entitlement to accrue years of benefit service on that basis. It thus is quite a natural place for such a stand-alone entitlement to appear.

Second, no other provision in Section 2.2 sets forth an entitlement to accrue years of benefit service in the backhanded manner posited by Vendura's reading of the last half of subsection (b). Rather, just like the first half of

- 17 -

subsection (b) and subsection (c), every other provision in Section 2.2 sets out the criteria for the entitlement to accrue years of benefit service in the first sentence of the provision.[4] See, e.g., Penncro Assocs., Inc. v. Sprint Spectrum, L.P., 499 F.3d 1151, 1155-56 (10th Cir. 2007) ("When a contract uses different language in proximate and similar provisions, we commonly understand the provisions to illuminate one another and assume that the parties' use of different language was intended to convey different meanings."); Taracorp, Inc. v. NL Indus., Inc., 73 F.3d 738, 744 (7th Cir. 1996) ("[W]hen parties to the same contract use such different language to address parallel issues . . . it is reasonable to infer that they intend this language to mean different things.").

Third, unlike the trailing language of the second half of subsection (b), subsection (c) sets forth the kind of precise and administrable definition of an entitlement that one would expect a provision conferring an entitlement to provide. By contrast, the trailing language in the second half of subsection (b) does not specify the long-term disability benefits to which it refers. That lack of specificity is curious if the second

[4] The one subsection that contains multiple independent entitlements, Section 2.2(f), sets them apart with Roman numerals. The lack of Roman numerals before the second half of subsection (b) thus provides further evidence that the second half of that subsection was not intended to confer an independent entitlement.

half of subsection (b) is intended to set forth an entitlement to accrue years of benefit service on the basis of such benefits. By contrast, the lack of specificity is not surprising if the second half of subsection (b) merely clarifies that those participants entitled to accrue twelve months of benefit service based on their receipt of workman's compensation for an on-the-job injury may also be able to claim sixty months of benefit service pursuant to the very next subsection. Thus, the fact that subsection (c) contains a specific reference to those "long-term disability benefits under any plan maintained by a member of the Controlled Group," and that the trailing language in the second half of subsection (b) does not, supports the Administrative Committee's conclusion.

Fourth, subsection (c), by its terms, does not purport to set forth an entitlement to accrue years of benefit service based on eligibility for long-term disability benefits that would not apply to Vendura. Instead, the terms of that subsection describe participants who may accrue years of benefit service based on their eligibility for long-term disability benefits without regard to whether the disability arose from a work-related injury and without regard to whether the participant received workers' compensation in consequence of that injury.

Finally, in addition to these textual and structural reasons for finding the Administrative Committee's reading to be a reasonable one, there is the pre-amendment history of Section 2.2. Prior to the amendment to subsection (c), there was no temporal cap under subsection (c). Thus, the following oddity would have arisen if the trailing language of the second half of subsection (b) set forth a stand-alone entitlement. Rather than merely having helpfully clarified the availability of the entitlement specifically provided for in subsection (c), that portion of subsection (b) also would have superfluously set forth that very same entitlement. The longstanding principle against reading plan terms to be superfluous, therefore, points against investing the last half of subsection (b) with the greater substance that Vendura contends must be attributed to it. Cf. Bouchard v. Crystal Coin Shop, Inc., 843 F.2d 10, 13-14 (1st Cir. 1988) ("Where the trustees of a plan . . . by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." (quoting Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan, 698 F.2d 593, 599 (2d Cir. 1983))).

To be sure, there is now a temporal cap under subsection (c). But, in light of the text and structure of the two subsections that we have just reviewed, the Administrative

- 20 -

Committee reasonably concluded that the imposition of the sixty-month cap in subsection (c) did not provide -- for the first time -- that those participants who are eligible for long-term disability benefits and who had previously been eligible for workers' compensation would be entitled to accrue more years of benefit service than any other participants who were entitled to accrue years of benefits services based on their eligibility for long-term disability benefits.  See, e.g., Diaz v. Seafarers Int'l Union, 13 F.3d 454, 457-58 (1st Cir. 1994) (considering the argument that a later version of a plan document shed light on whether an earlier version conferred the power to interpret pension eligibility rules); Kammerer v. Motion Picture Indus. Pension Plan, 487 F. App'x 597, 599 (2d Cir. 2012) (finding that when the current version of a plan did not define a relevant term, the plan administrator's use of a particular rule was supported by that rule's consistency with at least three earlier versions of the plan).  And so while the relevant provisions of Section 2.2 certainly could have been clearer -- say, by expressly cross-referencing subsection (c) in subsection (b) -- we conclude that the Administrative Committee reasonably construed the provisions to subject Vendura to the sixty-month cap in subsection (c).

**IV.**

The final issue concerns whether Vendura is entitled to elect a lump-sum payment of his pension benefits. Under Section 5.5 of the TRW Plan, which the NGSMSC Plan incorporates for a participant like Vendura, a participant may elect a lump-sum payment so long as "he files a written application therefor while an Employee still accruing Service during the three calendar month period immediately preceding his Retirement Date." Vendura requested a lump-sum distribution in 2013. As a result, the question of whether Vendura is entitled to a lump-sum distribution is fully answered by considering whether he was still accruing benefit service in 2013. Because we hold that the Administrative Committee reasonably determined that Vendura was not accruing years of benefit service under either the settlement agreement or the Plan in 2013, in consequence of the sixty-month cap in subsection (c) that the Administrative Committee reasonably construed to apply to him, the Administrative Committee also reasonably determined that Vendura was not entitled to elect a lump-sum distribution at that time.

**V.**

For these reasons, the judgment of the District Court is **affirmed**.

- 22 -