# United States Court of Appeals
## For the First Circuit

No. 21-1140

MARY ALEXANDRE,

Plaintiff, Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Thompson and Kayatta, <u>Circuit Judges</u>,
and Katzmann,[*] <u>Judge</u>.

<u>Lawrence R. Metsch</u>, with whom <u>Metschlaw, P.A.</u>, <u>Amiel Z. Weinstock</u>, and <u>AZW Law, LCC</u> were on brief, for appellant.
<u>Lincoln A. Rose</u>, with whom <u>Tamara Smith Holtslag</u> and <u>Peabody & Arnold LLP</u> were on brief, for appellee.

January 3, 2022

_____

[*] Of the United States Court of International Trade, sitting by designation.

**KATZMANN**, **Judge**.  This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), a federal statute designed to protect the interests of participants and their beneficiaries in employee benefit plans.[1]  29 U.S.C. § 1001 et seq.  Plaintiff Mary Alexandre appeals a decision by the U.S. District Court for the District of Massachusetts upholding defendant National Union Fire Insurance Company of Pittsburg, PA's denial of accidental death insurance benefits to Alexandre following her husband's death on the grounds that he had committed suicide.  Plaintiff asks that we remand to the district court with instructions to enter judgment in her favor.  We are not persuaded by Plaintiff's arguments and we affirm the district court's decision.

## I.    Background

### A. Facts

### 1.    The Accidental Death and Dismemberment Insurance Plan

In May 2018, Plaintiff Mary Alexandre ("Alexandre") was

---

[1] ERISA applies to:
> any employee benefit plan if it is established or maintained --
>> (1) by any employer engaged in commerce or actively affecting commerce; or
>> (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
>> (3) both.

Wickman v. Nw. Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990) (citing 29 U.S.C. § 1003(a)).

employed by PricewaterhouseCoopers, LLP ("PwC") and resided in Boston. Through PwC, Alexandre enrolled in an accidental death and dismemberment insurance policy ("the AD&D Policy" or "the AD&D Plan"), an employer-sponsored welfare plan that afforded participants like Alexandre rights and protections under ERISA. Under said AD&D Policy, Alexandre's husband, Marzuq Muhammad ("Marzuq"),[2] was insured for a death benefit of $500,000 with Alexandre named as the beneficiary.

While PwC served as the Sponsor and Administrator of Alexandre's AD&D Policy, PwC retained defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") to insure the Policy and to assume fiduciary responsibility for claim determinations. Concerning claims, the Summary Plan Description ("SPD")[3] provided to Alexandre by PwC states, in relevant part:

> **Payment of Death Benefits**
> If you or a covered dependent die as the result of, and within 365 days after, an accident that occurs while AD&D coverage is in effect, the full amount of your or

---

[2] We note that because our factual recitation requires discussion of both the deceased, Marzuq Muhammad, as well as his brother, Mujihad Muhammad, for clarity, we will refer to them by their first names throughout.

[3] The ERISA statute requires that plan participants receive a Summary Plan Description, see 29 U.S.C. § 1024(b), "written in a manner calculated to be understood by the average plan participant," 29 U.S.C. § 1022(a). ERISA contemplates that the SPD will be an employee's primary source of information regarding employment benefits. Sidou v. Unumprovident Corp., 245 F. Supp. 2d 207, 218 (D. Me. 2003) ("[T]he SPD 'is an employee's primary source of information regarding employment benefits.'" (quoting Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 764 (2d Cir. 2002))).

- 3 -

your covered dependent's AD&D coverage will be paid to the designated beneficiary(ies) in a lump sum.

(emphasis added). Neither the SPD nor the official Plan documents -- which articulate the complete details of and legally govern the AD&D Policy -- define the term "accident." However, the AD&D Policy explicitly excludes from coverage "losses, disability, or death caused by" "suicide or any attempt at suicide or intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury." The AD&D Policy further states that National Union "has the right to interpret the provisions of th[e] Plan, and [that] its decisions are conclusive and binding," but explains that unsatisfied participants "have the right to bring a civil action under Section 502(a) of ERISA within one year of the final adverse benefit determination."

### 2. <u>Marzuq Muhammad's Death</u>

The circumstances that gave rise to Alexandre's claim for death benefits under the AD&D Policy are as follows: On May 20, 2018, Alexandre's husband, Marzuq, died after falling nine stories from a hotel balcony in Atlanta, Georgia. Marzuq and his brother, Mujihad, had traveled from Boston to Atlanta on May 18 for an event and were staying overnight in a tenth-floor hotel room at the Hyatt Regency Hotel at the time of Marzuq's death.

According to the Fulton County Medical Examiner's Investigative Summary -- which details the accounts of Mujihad and

- 4 -

another witness in the immediate aftermath of Marzuq's death -- early on May 20, 2018, Marzuq "grabbed and squeezed" Mujihad's hand so that Mujihad "awakened to see [Marzuq] in a full sprint towards the door."  Immediately thereafter, Mujihad heard a "loud noise" and emerged from his hotel room to see Marzuq "kicking and wiggling" in a flower arrangement one story below on the ninth-floor ledge.

The Medical Examiner's report further details that Mujihad yelled to his brother "no[,] no, keep still," and that the other witness -- who was in the hotel atrium below -- heard Mujihad yell to Marzuq "no[,] no, keep still, don't do it."  Marzuq then rolled off the ninth-floor ledge and fell to the atrium floor. Marzuq died on impact and his final Death Certificate listed his death as a suicide.

### 3.  The Claim Denial

Following Marzuq's death, Alexandre submitted a claim under the AD&D Policy to National Union for accidental death benefits.  On July 31, 2019, AIG Claims Inc. -- the Claims Administrator for National Union -- informed Alexandre by letter that because Marzuq's "death was not a result of bodily injury sustained as a direct result of an unintended, unanticipated accident but was the result of suicide or an intentionally self-inflicted [i]njury," it was outside the scope of the AD&D Policy's coverage; Alexandre's claim for accidental death benefits was thus

denied. According to the denial letter, AIG based this rejection upon Alexandre's claim form, Marzuq's Death Certificate, the autopsy report, the City of Atlanta Incident Report, and the Fulton County Medical Examiner's Investigative Summary.

Alexandre appealed the denial of benefits to AIG's Global Personal Accident & Health Division on September 4, 2019. As part of this appeal, Alexandre submitted a sworn declaration by Mujihad -- taken on September 3, 2019 -- disputing the determination that his brother had committed suicide. Mujihad's sworn declaration differed in certain respects from the account he gave to the authorities at the scene of Marzuq's death; specifically, in contrast to Mujihad's statement recorded in the Medical Examiner's report that Marzuq exited the brothers' hotel room "in a full sprint" immediately before landing in a flower arrangement on the ninth-floor ledge, Mujihad's September 2019 account stated that Marzuq "did not appear to be disturbed or alarmed" as he "went out the door."

On May 4, 2020, AIG -- on behalf of National Union -- affirmed the denial of benefits to Alexandre by letter. In reaching this decision, AIG conveyed that it had considered Alexandre's appeal letter, Mujihad's September 2019 sworn declaration, case law submitted by outside counsel, and other materials, including those outlined in the July 31, 2019 denial letter. AIG further explained that in assessing the nature of

Marzuq's death on appeal, it considered the contemporaneous investigative reports by the officials in Georgia to be "more credible than the singular, after-the-fact Declaration of Mujihad."

## B. Proceedings

On January 21, 2020, Alexandre filed suit against National Union under § 502(a)(1)(B)[4] of ERISA in the U.S. District Court for the Southern District of Florida seeking $500,000 in accidental death benefits provided for by the AD&D Policy. On February 19, 2020, National Union moved to transfer the case to the U.S. District Court for the District of Massachusetts ("district court") pursuant to 28 U.S.C. § 1404(a),[5] which the

---

[4] ERISA § 502, codified at 29 U.S.C. § 1132(a)(1)(B), provides in relevant part:

**(a) Persons empowered to bring civil action**

A civil action may be brought -

(1) by a participant or beneficiary –

. . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

[5] 28 U.S.C. § 1404 provides, in relevant part:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Florida District Court granted on March 30, 2020.

Prior to the transfer, on March 17, 2020, Alexandre moved for summary judgment, invoking the presumptions against suicide and in favor of an accident adopted by the Eleventh Circuit in Horton v. Reliance Standard Life Insurance Co., 141 F.3d 1038 (11th Cir. 1998). Following the transfer, on May 19, 2020, National Union cross-moved for summary judgment on the grounds that Marzuq's death was not accidental, as informed by the First Circuit's analytical framework set forth in Wickman v. Northwestern National Insurance Co., 908 F.2d 1077 (1st Cir. 1990).

The district court granted National Union's motion for summary judgment, denied Alexandre's motion, and entered a final judgment in favor of National Union on January 20, 2021. In reaching this decision, the district court applied the First Circuit's Wickman framework to find that National Union did not abuse its discretion in determining that Marzuq's death was not an "accident," and was, thus, excluded from coverage under the AD&D Policy. In dicta, the district court also considered the Eleventh Circuit's presumption against suicide, as set forth in Horton, but found it to be overcome.

Alexandre timely filed her notice of appeal on February 18, 2021.

## C. **Legal Framework**

Before we dive into the parties' specific contentions on

appeal, we note that "[t]he reader may understand our decision in this case more easily by keeping in mind the following legal background." Bos. Trading Grp., Inc. v. Burnazos, 835 F.2d 1504, 1507 (1st Cir. 1987). In enacting ERISA, Congress sought to implement "a unified system of federal rules to govern the administration of employee benefit plans."[6] As such, Congress included a "virtually unique preemption provision," Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 24 n.26 (1983), that states ERISA "supersede[s] any and all State laws insofar as they . . . relate to any [covered] employee benefit plan," 29 U.S.C. § 1144(a).[7] ERISA "provides an exclusive federal cause of action" for resolving "suit[s] by a beneficiary to recover benefits from a covered plan," Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63 (1987), with state common law causes of action preempted, id. at 60 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987)).

Although ERISA is a "comprehensive and reticulated statute," Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980), since its inception, both Congress and the Supreme

---

[6] Joshua A.T. Fairfield, Comment, ERISA Preemption and the Case for a Federal Common Law of Agency Governing Employer-Administrators, 68 U. Chi. L. Rev. 223, 225 (2001).

[7] Although not before the court in this case, for the sake of completeness, we note that the statute "saves" certain state-law rules -- such as laws regulating insurance -- from preemption as part of ERISA's "Savings Clause." 29 U.S.C. § 1144(b)(2)(A).

Court have recognized that courts must develop a federal common law to interpret and fill in the gaps of ERISA.[8] For example, in the Conference Report on ERISA, Senator Jacob Javits -- one of the sponsors of the draft legislation[9] -- asserted that "[i]t is . . . intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong. Rec. S29,942 (1974) (statement of Sen. Jacob Javits). The Supreme Court has repeatedly invoked this statement by Senator Javits in support of courts' authority to develop federal common law under ERISA. See, e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989) ("Given . . . [ERISA's] history, we have held that courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" (first quoting Pilot, 481 U.S. at 56; then citing Franchise Tax Bd., 463 U.S. at 24 n.26)). Courts contributing to this federal common law are guided -- and limited -- "by ERISA's language, structure and purpose."[10]

---

[8] "The federal common law is generally defined as 'any rule of federal law created by a court when the substance of that rule is not clearly suggested by federal enactment.'" George Lee Flint, Jr., ERISA: Reformulating the Federal Common Law for Plan Interpretation, 32 San Diego L. Rev. 955, 967 (1995) (quoting George D. Brown, Federal Common Law and the Role of the Federal Courts in Private Law Adjudication--A (New) Erie Problem?, 12 Pace L. Rev. 229, 230 (1992)).

[9] See Jeffrey A. Brauch, The Federal Common Law of ERISA, 21 Harv. J.L. & Pub. Pol'y 541, 550 (1998).

[10] See Joseph J. Torres, et al., Jenner & Block, Practice Series:

Of specific relevance to the case at bar, two areas in which courts have been active in developing federal common law under ERISA include: (1) the standard of review for plan administrator decisions; and (2) plan interpretation.

### 1. **Standard of Review**

ERISA is silent as to whether, upon review, courts should afford any deference to a plan trustee's benefit eligibility determination.[11]  In Firestone, the Supreme Court declared that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the [plan] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  489 U.S. at 115.  In the latter case, the First Circuit has determined that a reviewing court "must uphold the administrator's determination unless it was 'arbitrary, capricious, or an abuse of discretion.'"  Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 87 (1st Cir. 2008) (quoting Wright v. R.R. Donnelley & Sons Co. Grp. Benefits Plan, 402 F.3d 67, 74 (1st Cir. 2005)).  "Thus, the current standard of review -- de novo review unless the [benefit plan] explicitly gives authority to the plan administrator -- was imposed through the exercise of federal common

---

ERISA Litigation Handbook, 231 (6th ed. 2021).

[11] Brauch, supra note 9, at 572.

- 11 -

law."[12]

## 2. Plan Interpretation

The ERISA statute, likewise, does not set forth principles of interpretation to determine the meaning of undefined terms contained in ERISA-covered plans.[13] The federal courts have, therefore, undertaken to fashion a body of common-law principles on plan interpretation, with many adhering to common-sense canons of contract interpretation. See, e.g., Burnham v. Guardian Life Ins. Co. of Am., 873 F.2d 486, 489 (1st Cir. 1989) ("[T]he 'federal common law of rights and obligations'" under ERISA "must embody common-sense canons of contract interpretation." (quoting Pilot, 481 U.S. at 56)). Several courts -- this one included -- have further declared that state laws on policy interpretation are preempted under ERISA. See, e.g., Bellino v. Schlumberger Techs., Inc., 944 F.2d 26, 29 (1st Cir. 1991) ("The benefit provisions of an ERISA-regulated plan [must be] interpreted under principles of federal substantive law.") (first citing Firestone, 489 U.S. at 110; then citing Burnham, 873 F.2d at 489); see also Sampson v. Mut. Benefit Life Ins. Co., 863 F.2d 108, 109-10 (1st Cir. 1988) (rejecting the argument "that the substantive law of Massachusetts -- rather than the body of federal common law that has grown up

_____

[12] Brauch, supra note 9, at 573 (emphasis added).

[13] Brauch, supra note 9, at 573.

- 12 -

around ERISA -- should govern the interpretation of the . . . policy" at issue).

As a specific -- and pertinent -- example concerning plan interpretation, various circuits have added to the federal common law on ERISA by formulating approaches for construing the term "accident" when left otherwise undefined in AD&D insurance policies.

For example, in the First Circuit, our precedent in Wickman provides the analytical framework for interpreting the term "accident." 908 F.2d at 1088. Under Wickman, for an insured's death to qualify as a covered "accident," "the beneficiary must demonstrate that the insured did not expect an injury similar in type or kind and that the suppositions underlying this expectation were reasonable," from the perspective of the insured. Wightman v. Securian Life Ins. Co., 453 F. Supp. 3d 460, 467 (D. Mass. 2020) (discussing Wickman, 908 F.2d at 1088 and citing McGillivray v. Life Ins. Co. of N. Am., 519 F. Supp. 2d 157, 163 (D. Mass. 2007)). If "the evidence [is] insufficient to accurately determine the insured's subjective expectation, the fact-finder should then engage in an objective analysis of the insured's expectations." Wickman, 908 F.2d at 1088.

In the Eleventh Circuit, the aforementioned Horton case supplies a different approach for construing the term "accident" in ERISA-covered policies. 141 F.3d at 1040. There, the Eleventh

- 13 -

Circuit announced that "when the evidence is inconclusive as to whether [a] deceased died by accidental or intentional means," it is "appropriate" to use "the legal presumptions against suicide and in favor of accidental death" to determine insurance benefit eligibility.  Id.  The court affirmed that -- at least in the Eleventh Circuit -- "[t]hese presumptions are properly part of the pertinent federal common law" governing ERISA.  Id.

With this legal background in mind, we now proceed to consider the parties' specific issues on appeal.

## II.  DISCUSSION

Suits brought under ERISA are federal questions for the purposes of federal court jurisdiction, see Taylor, 481 U.S. at 65-66 (discussing 29 U.S.C. § 1132(a)(1)(B)); thus, this case is properly in federal court pursuant to 28 U.S.C. § 1331.[14]  We have appellate jurisdiction to review the district court's final decision pursuant to 28 U.S.C. § 1291.[15]  We review the district court's grant of summary judgment de novo.  Wright, 402 F.3d at

---

[14] 28 U.S.C. § 1331 establishes federal-question jurisdiction:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[15] 28 U.S.C. § 1291 provides in pertinent part:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States. . . .

73-74 (citing <u>Boardman</u> v. <u>Prudential Ins. Co. of Am.</u>, 337 F.3d 9, 15 (1st Cir. 2003)).

### A. <u>Decisional Law</u>

Alexandre first contends that the district court erred when, following the transfer of the action from the Southern District of Florida, it granted summary judgment to National Union using the First Circuit's <u>Wickman</u> framework, rather than granting summary judgment to Alexandre on the basis of the Eleventh Circuit's presumption against suicide and in favor of an accident, as articulated in <u>Horton</u>. Alexandre further argues that the First Circuit decision upon which the district court relied in applying the transferee court's law as opposed to that of the transferor court -- namely, <u>AER Advisors, Inc.</u> v. <u>Fidelity Brokerage Services, LLC</u>, 921 F.3d 282 (1st Cir. 2019) -- contravenes Supreme Court guidance and should be overruled.[16]

By contrast, National Union contends as a threshold matter that Alexandre's argument that Eleventh Circuit precedent controls is waived because "Alexandre did not make this 'governing law' argument below"; in the alternative, National Union argues that the First Circuit's decision in <u>AER Advisors</u> properly controls and, thereby, dictates that the law of the First Circuit -- as the

---

[16] To clear up any confusion that may be caused by the "legalese," here, the Florida federal court was the "transferor court" and the Massachusetts federal court was the "transferee court."

- 15 -

transferee court considering a federal question -- applies.

### 1. **Waiver**

We find National Union's first contention -- that Alexandre did not preserve her governing law argument -- to be overly formalistic. After the case was transferred from the Florida District Court to the Massachusetts District Court, Alexandre continued to argue that the Eleventh Circuit's presumption against suicide, as elucidated in Horton, should apply. For example, in Alexandre's Memorandum of Law in Opposition to Defendant's Cross-Motion for Summary Judgment submitted to the district court, Alexandre contested National Union's motion for dismissal predicated on our Wickman decision, asserting:

> Because the facts underlying the Wickman decision are materially distinguishable from the facts underlying this case, [National Union's] cross-motion for summary judgment should be denied and [Alexandre's motion for summary judgment] should be granted on the authority of the decision in Horton v. Reliance Standard Life Insurance Company, 141 F.3d 1038 (11th Cir. 1998).

While Alexandre's Opposition Memorandum to the district court may not have included the specific words "governing law," implicit in her argument is the question of which circuit's case law applies following the transfer of a case under 28 U.S.C. § 1404(a); this is so because a federal court in Massachusetts would not decide a case "on the authority of" the Eleventh Circuit's precedent without determining that it was the governing law.

Moreover, the district court understood Alexandre's statements to comprise a governing law argument and, thus, responded to it as such. For example, in its Memorandum and Order on Cross-Motions for Summary Judgment, the district court declared:

> As an initial matter, Eleventh Circuit precedents are not binding on the Court. And that remains true here even though the case was originally filed in the Southern District of Florida. The First Circuit recently explained that after a federal-question case is transferred pursuant to § 1404(a), the transferee court should apply its own circuit's precedents concerning the meaning of federal law.

Because we agree with the district court's assessment that Alexandre raised a governing law argument below, we find no waiver. As such, we proceed to consider and reject Alexandre's governing law argument on the merits.

### 2. Merits

Alexandre's argument that the law of the Eleventh Circuit -- as the transferor court -- applies is foreclosed by our decision in AER Advisors, supra p. 15. Precedent is a bedrock to our system of adjudication. See United States v. Barbosa, 896 F.3d 60, 74 (1st Cir. 2018). Our "'law of the circuit'" doctrine, "a subset of stare decisis," dictates that "newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point." San Juan Cable LLC v. P.R. Tel. Co., Inc., 612 F.3d 25, 33 (1st Cir. 2010) (emphasis added) (citing United States v. Rodríguez-Vélez, 597 F.3d 32, 46 (1st

- 17 -

Cir. 2010) and <u>United States</u> v. <u>Wogan</u>, 938 F.2d 1446, 1449 (1st Cir. 1991)). "Although this rule is not 'immutable,' the exceptions are extremely narrow and their incidence is hen's-teeth-rare." <u>Id.</u> (quoting <u>Carpenters Local Union No. 26</u> v. <u>U.S. Fid. & Guar. Co.</u>, 215 F.3d 136, 142 (1st Cir. 2000)). "Absent special circumstances," -- such as a ruling of the Circuit sitting en banc -- "we are duty bound to follow our prior holding." <u>United States</u> v. <u>Hudson</u>, 823 F.3d 11, 15 (1st Cir. 2016) (citing <u>United States</u> v. <u>Chhien</u>, 266 F.3d 1, 11 (1st Cir. 2001) (listing exceptions)). Quite apart from the fact that a single panel is generally not authorized to overrule a prior panel's decision, Alexandre offers no new or previously unaddressed reason to deviate from our recent decision in <u>AER Advisors</u>; we decline her invitation to overrule that precedent and to apply the Eleventh Circuit's <u>Horton</u> presumption to her claim.

Alexandre acknowledges that her claim comprises a federal question for the purposes of federal court jurisdiction. In <u>AER Advisors</u>, we explained that "when one district court transfers a case to another, the norm is that the transferee court applies its own Circuit's cases <u>on the meaning of federal law</u>." 921 F.3d at 288 (emphasis added).[17] Nevertheless, Alexandre

---

[17] As we noted in <u>AER Advisors</u>, this principle has been endorsed by at least the Second, Fourth, Fifth, Eighth, Ninth, and Eleventh Circuits. See <u>id.</u> at 288 n.5 (collecting cases).

invokes the Supreme Court cases Van Dusen v. Barrack, 376 U.S. 612 (1964) and Ferens v. John Deere Co., 494 U.S. 516 (1990) -- which held that in diversity cases[18] the transferee courts must apply the substantive law of the transferor courts -- to contend that "[t]he inference to be drawn from the foregoing is ineluctable: in any civil action, whether based upon the parties' diverse citizenship or a federal question, following a transfer under 28 U.S.C. § 1404(a), the transferee court is obligated to apply the transferor court's governing law." (emphasis added).

However, we considered and rejected this exact argument in AER Advisors, explaining that "Van Dusen and Ferens are diversity cases. And with diversity cases, federalism commands that federal judges apply state substantive law exactly as a state court would." 921 F.3d at 289 (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Whereas with "'the adjudication of federal claims,' federal courts ordinarily 'comprise a single system in which each tribunal endeavors to apply a single body of law,' and if different circuits view federal law differently, then the Supreme Court can restore 'uniformity.'" Id. at 288 (quoting In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171,

---

[18] "Diversity cases" are those cases over which federal courts can assert jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000. McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 211-12 (1st Cir. 2012) (citing 28 U.S.C. § 1332(a)).

1175, 1176 (D.C. Cir. 1987), <u>aff'd on other grounds sub nom.</u> <u>Chan v. Korean Air Lines, Ltd.</u>, 490 U.S. 122 (1989)). Thus, we declared in <u>AER Advisors</u> that "'[n]othing' in <u>Van Dusen</u> [or <u>Ferens</u>] compels one federal court to apply another's interpretation of <u>federal law</u> after a case's transfer." <u>Id.</u> at 290 (emphasis in original).[19]

In sum, Alexandre has supplied no novel arguments that compel us to overturn our decision in <u>AER Advisors</u>. Adhering to our precedent, we find that the district court did not err in ruling that the decisional law of the First Circuit -- namely, the

_____

[19] For similar reasons, Alexandre's reliance on <u>Viernow</u> v. <u>Euripides Development Corp.</u>, 157 F.3d 785 (10th Cir. 1998) -- a case we did not earlier consider in <u>AER Advisors</u> -- is unavailing, as it is a non-binding diversity case that concerned only state law claims.

Nevertheless, Alexandre cites <u>Viernow</u> as part of her argument that 28 U.S.C. § 1631 -- transfer to cure want of jurisdiction -- comprises the <u>exclusive</u> exception to Alexandre's asserted general principle that in any civil action, the transferee court must apply the transferor court's governing law following a § 1404(a) transfer. The problem for Alexandre is that <u>Viernow</u> does not state such a rule. And moreover, dicta in at least one other Tenth Circuit opinion indicates that our sister circuit, likewise, accepts the general approach that we adopted in <u>AER Advisors</u> for federal-question cases. <u>See</u> <u>Olcott</u> v. <u>Del. Flood Co.</u>, 76 F.3d 1538, 1546 (10th Cir. 1996) (agreeing with a Seventh Circuit case explaining "that a transferee court normally should use its own best judgment about the meaning of federal law when evaluating a federal claim") (quoting <u>Eckstein</u> v. <u>Balcor Film Invs.</u>, 8 F.3d 1121, 1126 (7th Cir. 1993)).

In accordance with our aforementioned "law of the circuit" doctrine, Alexandre would have needed to furnish binding precedent to induce us to overturn <u>AER Advisors</u>. Here, Alexandre has supplied no caselaw -- neither persuasive, nor binding -- to support her construction of 28 U.S.C. § 1631 as the exclusive basis for a transferee court to apply its own circuit's cases following a § 1404(a) transfer. As such, we could not overturn <u>AER Advisors</u> on these grounds.

_Wickman_ framework -- rather than the decisional law of the Eleventh Circuit -- namely, the _Horton_ presumption against suicide -- governs Alexandre's federal cause of action under ERISA.

## B. <u>Adverse Benefit Determination</u>

Even though the district court held that courts within the First Circuit are not obligated to apply the Eleventh Circuit's presumption against suicide, it nevertheless explained in dicta that even considering _Horton_'s presumption, National Union's denial of benefits was not arbitrary, capricious, or an abuse of discretion given the "substantial evidence" indicating that Marzuq's death was intentional. On appeal, Alexandre contests this dicta, while National Union maintains that its decision to deny accidental death benefits to Alexandre was the correct one. Notably, Alexandre does not offer any argument that she can prevail under the _Wickman_ framework, even though she recognizes that binding precedent likely requires us to adhere to _Wickman_ instead of _Horton_. Applying the _Wickman_ framework, we affirm.

We review the district court's grant of summary judgment _de novo_, _Wright_, 402 F.3d at 73-74; however, because the AD&D Plan at issue stated that National Union "has the right to interpret the provisions of th[e] Plan, and [that] its decisions are conclusive and binding," we must review National Union's adverse benefit determination under the aforementioned arbitrary, capricious, or abuse of discretion standard. _Supra_ p. 11-12. On

- 21 -

appeal, Alexandre challenges neither the district court's conclusion that the AD&D Plan afforded National Union discretion nor the corresponding consequence that courts must employ the arbitrary, capricious, or abuse of discretion standard in reviewing National Union's adverse benefit determination. Because these issues are not before the court, we do not address them further.

As such, although we look at the district court's decision with fresh eyes, under the arbitrary, capricious, or abuse of discretion standard, we will "uphold [National Union's] denial of benefits if [its] decision was 'reasoned and supported by substantial evidence,'" Stamp, 531 F.3d at 87 (quoting Wright, 402 F.3d at 74). "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004).

While Wickman is not cited by name, the analysis in AIG's[20] ERISA Appeal Determination submitted to Alexandre by letter on May 4, 2020 conforms with Wickman's subjective/objective test for assessing accidents. As set out above, supra p. 13, where the term "accident" is otherwise undefined in an AD&D Policy, to find

---

[20] Recall that AIG serves as the Claims Administrator for National Union.

- 22 -

that an insured's death is covered, "the beneficiary must demonstrate that the insured [reasonably] did not expect an injury similar in type or kind" to the one that occurred, Wightman, 453 F. Supp. 3d at 467 (emphasis added) (discussing Wickman, 908 F.2d at 1088 and citing McGillivray, 519 F. Supp. 2d at 163); where the insured's subjective expectations are unknowable, "an objective analysis of the insured's expectations" is required, Wickman, 908 F.2d at 1088. Consistent with this directive, AIG reasoned that "Marzuq's volitional and purposeful conduct of sprinting out of the hotel room and hurtling himself over the 10th floor railing of a high-rise hotel is dangerous conduct" and "no reasonable person would believe that [doing as such] would not result in bodily harm or death, even if Marzuq didn't intend to kill himself." Thus, AIG -- and thereby, National Union -- concluded that Marzuq's death did not result from an "accident" on the basis of the kind of subjective/objective analysis required by Wickman.

Next, we ask whether substantial evidence in the record supports AIG's application of the Wickman framework. Inexplicably, Alexandre's counsel does not challenge AIG's finding that Marzuq "hurtl[ed] himself over the 10th floor railing." Although it appears that nothing more than speculation supports this claim -- as the evidence establishes only that Marzuq ran out of his hotel room and was then found one floor below the railing -- "[w]e [do] not consider potentially applicable arguments that

are not squarely presented in a party's appellate brief," Baybank-Middlesex v. Ralar Distribs., Inc., 69 F.3d 1200, 1203 n.5 (1st Cir. 1995) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)); see also Sanchez v. United States, 740 F.3d 47, 48-49, 54-55 (1st Cir. 2014) ("affirm[ing] the district court's decision that it had no choice but to dismiss" where counsel failed to timely lodge plaintiff's claims).  On appeal, Alexandre's sole contention -- and thus, the only argument that we address -- is that substantial evidence does not support the denial of benefits to Alexandre because AIG relied on reports produced by state personnel who arrived at the hotel after Marzuq's death rather than on the sworn declaration produced by Mujihad in September 2019.

We cannot conclude -- at least not on the basis argued by Alexandre -- that National Union's adverse benefit determination was arbitrary, capricious, or an abuse of discretion.  In rendering its decision, AIG considered the Fulton County Medical Examiner's Investigative Summary -- which captured the accounts of two percipient witnesses, including an otherwise unaffiliated witness's statement that he heard Mujihad yelling "no[,] no, keep still, don't do it" immediately prior to Marzuq's fall -- as well as Marzuq's final Death Certificate listing his cause of death as a suicide, among other documents.  While Alexandre questions whether opinions and reports produced by state

personnel who arrived on the scene after Marzuq's death should be considered "evidence," we agree with the district court that these "contemporaneous and impartial" documents "authored by . . . state official[s] in the exercise of [their] official duties" are probative.

Moreover, we agree with the district court that National Union reasonably engaged with Alexandre's contrary evidence -- namely, Mujihad's later sworn declaration -- and "reasonably rejected [it] as less credible than the contemporaneous, neutral evidence from the state." "[T]he existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Gannon, 360 F.3d at 213. As such, we cannot -- on the basis raised by Alexandre -- conclude that National Union's determination that Marzuq's death was excluded from coverage because it was not accidental was arbitrary, capricious, or an abuse of discretion.[21,22]

---

[21] National Union also maintains that Alexandre's claim is further precluded from coverage by the AD&D Plan's intentional self-inflicted injury exclusion. Because Alexandre has not argued grounds sufficient to disturb National Union's conclusion that Marzuq's death was excluded from coverage because it was not accidental, we need not reach this additional contention.

[22] In her reply brief as well as in a Federal Rule of Appellate Procedure 28(j) letter, Alexandre submitted the cases Krantz v. John Hancock Mutual Life Insurance Co., 141 N.E.2d 719 (Mass. 1957) and Bohaker v. Travelers' Insurance Co., 102 N.E. 342 (Mass. 1913), to argue for the first time that Massachusetts also employs a presumption against suicide.
As an initial matter, "[b]lack-letter law holds that, in the absence of exceptional circumstances, arguments presented for

- 25 -

the first time in an appellant's reply brief are deemed waived." Álamo-Hornedo v. Puig, 745 F.3d 578, 582 (1st Cir. 2014). The same is true for Rule 28(j) letters. See, e.g., Rosa-Rivera v. Dorado Health, Inc., 787 F.3d 614, 617 (1st Cir. 2015) ("Not only is it improper to advance new arguments in a 28(j) letter, but it is far too late in the game." (internal citation omitted)). As Alexandre does not advance any "exceptional circumstances" to justify the delay, we find her argument waived.

But waiver aside, Alexandre's argument is also incomplete because each of her submitted cases predates ERISA. As such, even if Massachusetts state law has embraced a presumption against suicide -- a point on which we take no position at this time -- Alexandre has not argued either (1) that any such presumption "regulates insurance" so as to fall within ERISA's Savings Clause, see UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 367-68 (1999); or (2) that we have incorporated that presumption into the First Circuit's federal common law on ERISA, see Sampson, 863 F.2d at 109-10 (rejecting the argument that "the substantive law of Massachusetts -- rather than the body of federal common law that has grown up around ERISA -- should govern the interpretation of the . . . policy" at issue).

In fact, Alexandre appears to concede both of these points, as her reply brief states:

> Had Ms. Alexandre, without the involvement of her employer, purchased an accidental death benefits insurance policy on her husband's life from [National Union], she would have gone into battle with [National Union] armed with the presumption against her husband's suicide. However, because her employer had procured the [National Union] accidental death benefits policy, . . . Ms. Alexandre went into battle with [National Union] unarmed with the presumption against her husband's suicide.

(emphasis in original). In essence, Alexandre is saying that if this were not an ERISA case, she would get the benefit of the presumption against suicide under Massachusetts state law; but because this is an ERISA case -- and thus ERISA's preemption provisions apply -- she does not get the benefit of such a state-law presumption. While we take no view on whether Alexandre is correct that federal common law, not state law, applies in this circumstance, we conclude that Alexandre's statement is, at the very least, a concession that we should apply federal common law, not state law, to her case.

### III. <u>Conclusion</u>

Though we decline to disturb National Union's adverse benefit determination, our decision is not intended to lessen the tragedy of Marzuq's death or to minimize the loss of those who loved him.  We acknowledge that Marzuq's family and friends may still have questions about the circumstances attending his end of life.  Our determination simply means that, in light of the arguments raised on appeal and the standard that governs our review, we cannot conclude that National Union's denial of AD&D benefits was arbitrary, capricious, or an abuse of discretion.

For the reasons stated above, the judgment in favor of National Union is **affirmed.**